### BEFORE THE U.S. COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No. 22-6628**

**From 8:20-cv-800-TLW-JDA (DSC)**

| | |
|---|---|
| Marie Assa'ad-Faltas, MD, MPH, | *Habeas* Petitioner, also § 1983 Plaintiff/Appellant. |
| *vs.* The State of South Carolina ("SC") and the City | |
| of Columbia, SC, (hereinafter *"the* City")*, | *Habeas* Respondents, also § 1983 Defendants/Appellees. |

**Appellant's PRELIMINARY Opening Brief <u>COMBINED WITH</u> Appellant's MOTION for *threshold* Appointment of Counsel as this Case Raises *inter alia* three Important Novel Question.**

### I and II. Introduction and Argument for *THRESHOLD* Appointment of Counsel

Till now, *most* novel legal arguments Appellant, Marie Assa'ad-Faltas, MD, MPH ("Dr. Assa'ad-Faltas") *pro se* urged over the years of her *pro se* defense against the many *false* criminal charges and unfounded deportation/exclusion/removal proceedings brought against her were *ultimately* proven correct.

*All* said charges and immigration proceedings are *objectively proven to have been brought* for Dr. Assa'ad-Faltas' opponents in civil litigation/competitors in her professions **to gain *unfair* advantages over her**. Dr. Assa'ad-Faltas' vindication took years of which she *now* has little left because her elsewhere-contested 27 June to 4 July 2022 incarceration at Richland County's ("RC"), SC, Alvin S. Glenn Detention Center ("ASGDC") caused her atrial fibrillation ("A-Fib") and consequent new disabilities. *Some* of Dr. Assa'ad-Faltas' innovative ideas and/or perceptive alarms in the medical and public health fields were belatedly vindicated, too; but she is not given credit for them *precisely because* her competitors in those fields are the ones who had caused the unfounded immigration proceedings against her *ab initio*.

Medical/public health ideas survive their proponents; but legal ideas do not if their proponent loses the case *without meaningful review*. Unpublished opinions do not bind *judges* in other cases **but** they *effectively* bind subsequent *advocates* who are discouraged by the *undeserved* failure of the innovative idea.

This Court's Office of Staff Counsel ("OSC") will not value Dr. Assa'ad-Faltas' writings but will *automatically* brand her "frequent filer" as did the author of the R&R whose acceptance originated this appeal.

**One OSC law clerk has no time *or incentive* to review that history and determine that *all* Dr. Assa'ad-Faltas' legal submissions respond *to what was done to her, <u>not</u> to anything she did*. So, the only hope for *actual* review by Article III judges is *threshold* appointment of counsel.**

*E.g.*, Dr. Assa'ad-Faltas' opposition to the contrived immigration proceedings since 1988 engendered ten case numbers *before this Court <u>and</u> the district courts in its territorial jurisdiction,* **all dismissed *without* prejudice or affirming such dismissal.** Dr. Assa'ad-Faltas' vindication came only *after* **she became a representative of a nation-wide class** in a Western District of Washington case which ended in 2008, *twenty* **years later,** with the Government admitting it had misinterpreted and misapplied the Immigration Reform and Control Act of 1986 ("IRCA") **and *after* talented and energetic aliens in that class had lost their *entire* youths in legal limbo which was none of their fault and which Congress had intended to avoid.** In federal habeas, delay of such magnitude benefits *only the rare person* **who nonetheless monopolizes a disproportionate share of judicial attention and effort:** the admitted murderer contesting imposition of the death penalty (to which Dr. Assa'ad-Faltas, an *absolute* pacifist, is opposed.) When an admitted murderer dies of old age on death row, he has *in effect* defeated capital punishment. **But when a wrongly convicted one dies in, *or as a belated result of*, unjust incarceration, the death penalty would *in effect* have been executed *without* review or with review severely constricted by the efforts to make the death penalty "effective."** Even for death row inmates, the U.S. Supreme Court has ruled that the shortest *procedural* path to exoneration should be taken. *Wearry* v. *Cain,* 577 U.S. 385, 106 S.Ct. 1002,1008 (2016) concluded, *inter alia*:

> The alternative to granting review, after all, is forcing Wearry to endure yet more time
> on Louisiana's death row in service of a conviction that is constitutionally flawed.

Appellant is not *de juro* on death row but she risks death from being, God forbid, returned to ASGDC upon affirmance of the conviction and sentence here challenged. In reviewing this appeal, in applying exhaustion rules, and in ruling on this motion to appoint counsel, this Court is prayed **to draw *sharp* contrasts** between capital cases defense on one hand and defense in other criminal cases on the other.

In the *human nature* of gaming the system, defense lawyers benefit their clients by *intentionally but <u>not</u> obviously* omitting, in the guilt and sentencing phases of capital cases, defenses/objections which would not have *surely* changed the outcome but would *likely* be found to throw doubt on the outcome. By thus ensuring long *subsequent* collateral proceedings, capital defense trial counsel wins by prolonging the client's life, albeit on death row. **All federal habeas exhaustion statutes and jurisprudence are meant to defeat that gaming *in capital cases*.** In all other criminal cases, **the Prosecution has the incentive to game the system by inserting *intentional error*** not so obvious as to cause presiding judges to intervene but substantial enough to tilt the jury towards conviction in a borderline case. Even if and when that tainted conviction is vacated, the wrongly-convicted defendant would *typically* by then have served substantial time which the Prosecution leverages to obtain guilty plea(s) for time served.

This Court is prayed to, NOT ignore statutes requiring exhaustion, but look through text into the evils exhaustion is meant to eliminate. **Appellant *acting for herself* had every incentive to exhaust the jurisdictional issues <u>and urged them at *every* chance she was given *to speak for herself.*</u>**

As early as her 25 April 2013 sentencing in the underlying case, Dr. Assa'ad-Faltas urged that the U.S. Constitution's no-new-State (Article IV, Sect. 3, Cl. 1) and Guarantee (Article IV, Sect. 4) Clauses make the City of Columbia's ("*the* City") so-called "municipal court" ("CMC") NOT a court with jurisdiction to prosecute crime and impose sentences *because CMC is **totally** owned and operated by* the *City, which is NOT a sovereign* and CMC operates totally beyond the State and Federal sovereign's control.

**Dr. Assa'ad-Faltas repeated this argument in the 13 December 2013 first-appeal-layer hearing before RC's Circuit Court of Common Pleas ("RCCCCP") *and again* in RCCCCP 3 September 2015 hearing on her motion to certify that issue to SC's highest court.** The complete transcripts of both hearings were submitted to the district court in support of Part-II of Dr. Assa'ad-Faltas' *habeas* petition.

In SC Appellate Case ("SC App. #") 2019-000708 (*at* https://ctrack.sccourts.org/public/caseView.do?csIID=69765), relief of counsel was, **on 3 September 2021**, sought for Dr. Assa'ad-Faltas to *pro se* challenge **both** CMC's jurisdiction <u>and</u> *the facial <u>and</u> as-applied* constitutionality of those parts of SC's Uniform Post-Conviction Relief Act ("SC PCR Act") and of SC's Appellate Court Rules ("SCACR") which allow *the State* to appeal PCR grants. SC App. # 2019-000708 was *the State's* petition to review PCR grant to Dr. Assa'ad-Faltas from *another* CMC conviction where RCCCCP, sitting as the state PCR *trial* court, did **not** reach CMC's non-sovereignty (which Dr. Assa'ad-Faltas had argued *pro se* to that court) because that court granted relief on other grounds. Dr. Assa'ad-Faltas wanted both issues asserted as additional sustaining grounds for her PCR grant but her *forced* appellate PCR counsel refused; and SC's Court of Appeals ("SC-CoA") declined to relieve that counsel. Dr. Assa'ad-Faltas timely appealed to SC's Supreme Court ("SC S Ct") from SC CoA's denial of leave to proceed *pro se*. **On 10 December 2021, SC-CoA DENIED *the State's* certiorari *petition* and issued the remittitur on 31 December 2022.**

Dr. Assa'ad-Faltas *immediately* asked the district court to take judicial notice of SC-CoA's action *for the* habeas *petition* sub judice. Without explanation, the district court denied **both** notice and *habeas* relief.

**On 31 August 2022**, SC S Ct issued its ORDER (Exx. 1-2 hereto) *acknowledging* Dr. Assa'ad-Faltas' appeal but *erroneously and disingenuously* treating it as a "wholly frivolous" ignorance of the *existence* of the challenged SC PCR Act and SCACR provisions, **not a challenge to their constitutionality.**

SC S Ct's 31 August 2022 ORDER (highlighting at Ex. 2) also acknowledged Dr. Assa'ad-Faltas' challenge to CMC sovereignty but did NOT further address it in any way.

Thus, the record before this Court *today* contains *full exhaustion* before SC's highest court of the unconstitutionality of *parts* of SC PCR Act and of CMC's illegitimacy (hence lack of jurisdiction) as a "court" of a non-sovereign.

A ruling on a motion (here on a certificate of appealability {"COA"}) is made on the state of the record *at the time of the ruling,* not the time the motion is filed. *Ortiz* v. *Jordan*, 562 US 180, 131 S. Ct. 884 (2011). *Vide etiam*: (1) *Peacock* v. *Bd. of Sch. Comm'rs*, 721 F.2d 210, 214 (7th Cir. 1983) (generally finding that material not in existence until after trial falls within 60(b)(2) only if it pertains to facts in existence at time of trial). (2) *Gray* v. *Bryant*, 298 S.C. 285, 287, 379 S.E.2d 894, 895-6 (1989), (finding juror's letter to newspaper praising doctors and criticizing parties who sue them, which was written on the same day the jury returned a verdict in favor of the defendant doctor and published two weeks after verdict, revealed a preexisting bias and was newly discovered evidence for purposes of Rule 60(b)); (3) *Amesco Exports, Inc.* v. *Assoc. Aircraft Mfg. & Sales, Inc.,* 87 F.Supp.2d 1013, 1015 (C.D. Cal. 1997) (finding plaintiff corporation's receipt of letter from tax commission advising it of conditional revival of its corporate status constituted newly discovered evidence for purposes of 60(b)(2) warranting relief from final judgment); (4) *Nat'l Anti-Hunger Coal.* v. *Exec. Comm. of the President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1075 n.3 (D.C. Cir. 1983) (stating task reports that came into existence after lower court's decision pertained to facts in existence at time of decision which supported a finding that the reports were newly discovered evidence within the meaning of Rule 60(b), FRCP); and (5) 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2859 (2d ed. 2008) (stating **"Rule 60(b)(2) has proved useful, especially when the newly discovered evidence calls into question the validity of the judgment by directly refuting the underpinnings of the theory which prevailed"**).

Rule 60(b) law also applies here to the request for COA in that after-issuing SC S Ct and SC-CoA ORDERS and actions prove that any *purported* failure of exhaustion was none of Dr. Assa'ad-Faltas' fault but resulted *solely* from SC's state courts **whimsically, discriminatorily and oppressively,** applying to her restrictions not rooted in any valid, *consistently applied,* state court law or rule.

SC S Ct had demanded obedience to itself "right or wrong" by SC's lower courts in denying Dr. Assa'ad-Faltas equal access to SC's courts and right of *pro se* advocacy before those courts but *has now allowed her* pro se *advocacy before SC S Ct itself and before SC-CoA.* (SC S Ct 26 September 2022 ORDER and SC-CoA 17 November 2022 ORDER, Exx. 3 and 4 hereto). **SC App ## 2021-000047, 48, and 49; and 2022-000145 and 000339, where Dr. Assa'ad-Faltas is now listed as "self-represented"** are respectively at https://ctrack.sccourts.org/public/caseView.do?csIID=73216**,** https://ctrack.sccourts.org/public/caseView.do?csIID=73217,     https://ctrack.sccourts.org/public/caseView.do?csIID=73218, https://ctrack.sccourts.org/public/caseView.do?csIID=74911, and https://ctrack.sccourts.org/public/caseView.do?csIID=75112,**. SC App ## 2013-000862 and 2021-000815 are not *publicly* available even to Dr. Assa'ad-Faltas herself.**

Challenge to jurisdiction is never waived and may be first raised at any stage, including federal habeas. **Indeed, the origin of common-law habeas is to challenge the jurisdiction of one's custodian.** *INS* v. *St. Cyr*, 533 US 289, 301-3 (2001) [emphasis added, footnotes omitted]:

> At its historical core, the writ of habeas corpus has served as a means of reviewing

the legality of Executive detention, and it is in that context that its protections have been strongest.[14] See, e. g., *Swain* v. *Pressley,* 430 U. S. 372, 380, n. 13 (1977); *id.,* at 385-386 (Burger, C. J., concurring) (noting that "the traditional Great Writ was largely a remedy against executive detention"); *Brown* v. *Allen,* 344 U. S. 443, 533 (1953) (Jackson, J., concurring in result) ("The historic purpose of the writ has been to relieve detention by executive authorities without judicial trial"). In England prior to 1789, in the Colonies,[15] and in this Nation during the formative years of our Government, the writ of habeas corpus was available to non-enemy aliens as well as to citizens.[16] 302*302 It enabled them to challenge Executive and private detention in civil cases as well as criminal.[17] Moreover, the issuance of the writ was not limited to *challenges to the jurisdiction of the custodian*, but encompassed *detentions based on errors of law, including the erroneous application or interpretation of statutes*.[18] It was used to command the discharge of seamen who had a statutory exemption from impressment into the British Navy,[19] to emancipate slaves,[20] and to obtain the freedom of apprentices[21] and asylum inmates.[22] Most important, for our purposes, those early cases contain no suggestion that habeas relief in cases involving 303*303 Executive detention was only available for constitutional error.[23]

Thus, no COA is needed to challenge to CMC's and *the* City's jurisdiction via *common-law* habeas; but if one were needed, it should be *mandatory* and *automatic* under the facts of this case **where a sitting** *state* **judge** *formally* **found the challenged state conviction unconstitutional but was later overruled.** Dr. Assa'ad-Faltas was granted PCR by Retired SC Chief Justice Toal sitting as PCR trial judge but was reversed by SC S Ct minus its current Chief Justice Beatty, who recused himself.

*Buck* v. *Davis*, 580 U.S. _, 137 S. Ct. 759, 773 (2017), **held** [with forms of emphasis added]:

> **The COA inquiry**, we have emphasized, **is** <u>**not**</u> **coextensive with a merits analysis.** *At the COA stage, the only question is whether the applicant has shown that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id.,* at 327, [quoting *Miller-El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029 (2003)].

Here, **a** *sitting* **jurist of reason** <u>***did***</u> **hold the conviction unconstitutional**; that *ipso facto* <u>exceeds</u> a hypothetical jurist who "could" so find. And the district court *itself* (ECF 29 below) rejected the U.S. magistrate Judge's *first* R&R *in this case* and recommitted the case to her, thereby ***necessarily*** finding "**the issues presented are adequate to deserve encouragement to proceed further.**"

The novel argument deserving of *threshold* appointment of counsel is that a COA is *mandatory* and *automatic* under such circumstances. **As similar** *procedural* **facts reoccur in SC, a state source of many** *habeas* **appeals to this Court, this matter should be heard initially** *en banc* **and with appointed counsel to void conflicts among the panels and among lower courts.**

### III. *The* City, a non-sovereign, has NO JURISDICTION to own or operate a court.

The U.S. Constitution ordains in Article IV, Section 3, Clause 1 [with emphasis added]:

> **New States may be admitted by the Congress into this Union;** *but* <u>*no new State*</u> *shall be formed or erected within the Jurisdiction of any other State*; **nor any State be formed by the Junction of two or more States, or Parts of States, without the Consent of the Legislatures of the States concerned as well as of the Congress.**

And the U.S. Constitution promises in Article IV, Section 4:

> **The United States shall guarantee to every State in this Union a Republican Form of Govern-ment, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence.**

The challenged conviction *is not a* "judgment of a **state court**" but of a non-court of non-sovereign. Thus, Appellant's applications should have been recognized as *common law* habeas *challenging the jurisdiction of CMC, Appellant's custody-holder* under the Supremacy, No-New-State and Guarantee Clauses of the U.S. Constitution. <u>What is not a *real* court can never have jurisdiction.</u> *U. S. Term Limits, Inc., et al.* v. *Thornton et al.*, 514 U.S. 779, 838-9 (1995), held:

> **Federalism was our Nation's own discovery. The Framers split the atom of sovereignty. It was the genius of their idea that our citizens would have two political capacities, one state and one federal, each protected from incursion by the other. The resulting Consti-tution created a legal system unprecedented in form and design, establishing two orders of government, each with its own direct relationship, its own privity, its own set of mu-tual rights and obligations to the people who sustain it and are governed by it. It is ap-propriate to recall these origins, which instruct us as to the _839*839_ nature of the two different governments created and confirmed by the Constitution.**

Clearly, the U.S. Constitution "split the atom of sovereignty" only two ways," not more. **A state has no power to** *further* **"split the atom of sovereignty"** without splitting *itself* into smaller states *but only with Congress' consent.* Thus, [*Jinks* v. *Richland County*](#), 538 US 456 (2003), unanimously held that political subdivisions do NOT partake of state's sovereignty. Any SC act purporting to bestow sovereign powers to criminalize conduct/prosecute crime on *the* City is void as unconstitutional; *e.g., Swicegood* v. *Thompson*, 435 SC 63, 65, 865 SE2d 775 (2021):

> **See *Norton* v. *Shelby Cnty.*, 118 U.S. 425, 442 (1886) ("An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; . . . it is, in legal contem-plation, as inoperative as though it had never been passed."); *Bergstrom* v. *Palmetto Health All.*, 358 S.C. 388, 399, 596 S.E.2d 42, 47 (2004) ("Generally, 'when a statute is adjudged to be unconstitutional, it is as if it had never been.'" (quoting *Atkinson* v. *S. Express Co.*, 94 S.C. 444, 453, 78 S.E. 516, 519 (1913))).**

Also, *State* v. *Long*, 406 SC 511, 753 S.E.2d (2014), and *in the matter of Richland County Magistrate's Court*, 389 S.C. 408 699 S.E.2d 161 (2010), emphasized that only a sovereign may prosecute crime. Therefore, Dr. Assa'ad-Faltas' conviction and sentence were void *ab initio* for having been entered by CMC which is not a court of a sovereign recognized by the U.S. Constitution.

### IV. <mark>This appeal should be heard *as of right* at least of the §1983 challenge to SC PCR Act</mark>.

Acting as erroneously and disingenuously as SC S Ct (which controls the licensure and hence livelihood of even U.S. magistrate judges in SC), U.S. Magistrate Judge Austin's (DSC) *totally ignored* Dr. Assa'ad-Faltas' §1983 claim under *Skinner* v. *Swisher*, 562 US 521 (2011), challenging the appealability *by the state* of a PCR grant to a state convict. Under Rule 8, FRCP, a §1983 claim which does not *necessarily* challenge the conviction *per se* may be combined *in one action* with a federal habeas application.

### V. <mark>The *substantive* facts here are so extreme as to shock every *fair* jurist's conscience</mark>.

The 11 April 2013 CMC trial transcript proves Dr. Assa'ad-Faltas was *within view <u>and hearing of the jury</u>* threatened to be "slap[ped] across the face," told to "shut up," <u>and</u> prevented from testifying in rebuttal by her forced counsel Orin Briggs, who audibly said, "you already killed yourself to this jury."

In Ex. 5 hereto, Chief U.S. District Judge Harwell (DSC) rejected in part U.S. Magistrate Judge (DSC) McDonald's *first* R&R *in another case* (and later *ultimately* granted relief *in that other* case) *solely* because Mr. Mangal's trial counsel failed to object to testimony which bolstered the alleged victim's credibility to the jury. **A multo fortiori here,** Dr. Assa'ad-Faltas' own counsel told the jury Dr. Assa'ad-Faltas is so incredible she has "already killed" herself to that jury. **That issue was *inter alia* adequately pre-sented to the state PCR trial court at 7 Dec. 2016 Tr. pp 69-70 = ECF 53-3 p 461 = ECF 57-7 pp 109-10 = Am App pp 948-9`):**

> MS. MOODY: Okay, so we can rest -- we can rely on the transcript as to the trial, correct?
> THE COURT: That's right.
> THE WITNESS: Yes.
> THE COURT: And in the transcript, she's given a very adequate description now of things about which she complains. She doesn't think he was prepared. Nobody really was -- let her assert the things about the jury taint she wanted to, and then in the course of the trial **she's got a lot of contentions *about the way Mr. Briggs comported himself to her and to the jury,* and she's detailed those in her other filings, and I can read them in the record.**
> MS. MOODY: Okay. Thank you.
> THE COURT: So, we've got issue. **That's one of the issues, no question about it.**

In *Matter of Geer,* 422 SC 415, 420, 812 S.E.2d 731 (2018), SC S Ct wrote, **"Although we are sympa-thetic to Respondent's substantial, well-documented mental health issues, 'we must weigh this sympathy against our duty to protect the public from lawyers who may lack the present ability to adequately represent their clients in the courts of this State.'** *In re Longtin,* 393 S.C. 368, 380, 713 S.E.2d 297, 303 (2011)**."**

All pre-trial and trial transcripts were before the state PCR trial judge, Retired/Active SC Chief Justice Toal sitting as SC circuit judge, who read them in the months between the two parts of the PCR trial so carefully she may have memorized them as proven by her comments in the 14 June 2017 session.

Even if Dr. Assa'ad-Faltas had not made Briggs' comportment a PCR issue, a lawyer threatening to slap his client and telling her "You killed yourself with the jury," *both within sight and hearing of the jury,* **is so extreme** *even a novice jurist would have known* **it prejudiced the criminal defendant at trial**

**VI. What findings of fact and conclusions of law SC S Ct made are *objectively* unreasonable.**

In Dr. Assa'ad-Faltas' cases, SC S Ct has a habit of insisting that what quacks like a duck, swims like a duck, lays eggs the size and color of duck eggs, and has duck DNA, **must be a monkey**, *not a duck,* solely <u>because</u> it was filmed the same day a monkey was filmed by the same photographer. Here, SC S Ct *unreasonably* found *as a fact* that Dr. Assa'ad-Faltas' sliver of *vacant* land (so shown in the photos, Ex. 6 hereto) is *"rental property"* <u>to which</u> the *City is authorized to apply building codes* apparently *solely* because that vacant lot is adjacent to the "rental property," <u>not</u> of Dr. Assa'ad-Faltas, **but of her false accuser in other cases, Dinah Gail Steele, who had also egged *the City* to issue the ordinance summons resulting in the conviction underlying this case**. Indeed, SC S Ct did not later bother to even *pretend* it read Dr. Assa'ad-Faltas' petition for rehearing of its reversal of the PCR grant to her.

**VII. The district court ignored this Court's controlling *Thomas v. Davis,* 192 F.3d 445 (1999).**

Dr. Assa'ad-Faltas had prevailed before the SC PCR trial court and thus needed not preserve her addi-tional sustaining grounds against the State's appeal. *Thomas, supra,* held in relevant part at 451:

> **Inasmuch as the PCR court's ruling on the fair-notice claim was not adverse to Thomas, it appears that he was not required by SCACR 207(b)(2) to assert the claim as an additional sustaining ground. Although the appellants point to several instances where a respondent's failure to raise a particular argument as an additional sustaining ground rendered it**

**susceptible to default, it is by no means clear that the respondents in any of these cases had, like Thomas, prevailed on the argument in the lower court.**

And *State v. Key*, 431 S.C. 336, 343, 848 S.E.2d 315, 318 (2020), held:

**When Key appealed to the circuit court, the State argued as an additional sustaining ground that the record "is replete with exigent circumstances," and cited Key's unconscious state as one of those circumstances. …. Here, the basis for the additional sustaining ground appears in the record on appeal. Because the State raised the issue of exigent circumstances to the circuit court, raised the issue again in its motion for reconsideration, and raised the issue on appeal to this Court, the exigent circumstances issue is preserved for review**

### VIII. Incorporation by reference of all arguments below.

Even if the threshold issues of CMC's lack of jurisdiction and of the unconstitutionality of *the State's* appeals from PCR grants were not dispositive, Dr. Assa'ad-Faltas had amply demonstrated to the district court that her *other* constitutional rights were violated. The district court never ruled *on the substance* of those arguments but summary held they were defaulted because not raised to SC S Ct *even though that SC S Ct* **had denied Dr. Assa'ad-Faltas' PCR appellate lawyer <u>a chance to file a brief in opposition</u> to the State's appeal from the grant of PCR to Dr. Assa'ad-Faltas.** Thus the district court used the denial of one constitutional right to deny review of other constitutional violations. **All Dr. Assa'ad-Faltas' arguments to the district court are hereby *expressly* incorporated herein by reference and should be reviewed *de novo* by this Court.**

### IX. Conclusions.

Counsel should be appointed and the threshold issues of *mandatory* issuance of COA in circumstances such as here where at least *two* reasonable jurists have already found constitutional violations or that the claims should be encouraged to move forward should be heard initially *en banc*. So should the issues of inability of a non-sovereign to criminalize conduct, prosecute crime and/or incarcerate people. The grant of state PCR relief to Dr. Assa'ad-Faltas should be reinstated because it was error to reverse it.

Respectfully submitted on 23 November 2022 and served by ECF, all God so willing.

**[S/] Marie Assa'ad-Faltas, MD, MPH, Plaintiff-Petitioner/Appellant-Movant *pro se***
**P.O. Box 9115, Columbia, SC 29290**
**Phone: (803) 783 – 4536         Cell: (330) 232 – 4164**
**e-mail: Marie_Faltas@hotmail.com and MarieAssaadFaltas@GMail.com**